UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                            Case No. 08-20238
                                                            Hon. Lawrence P. Zatkoff

ARNOLD PURIFOY,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 24, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Suppress evidence and statements [dkt 17]. Testimony was heard in this matter on September 4 and 11, 2008, and the parties filed supplemental briefs thereafter. For the following reasons, Defendant's Motion is DENIED.

## II. BACKGROUND

On April 24, 2008, the Drug Enforcement Agency ("DEA") executed a search warrant on Defendant's residence in Commerce Township, Michigan, finding approximately 482 gross grams of cocaine, various drug paraphernalia, and seven firearms, including an assault rifle. Defendant is charged with Felon in Possession of a Firearm under 18 U.S.C. § 992(g)(1), Possession With Intent to Distribute Cocaine under 21 U.S.C. § 844(a), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime under 18 U.S.C. § 924(c).

DEA Task Force Agent Patrick DeBottis supplied an affidavit that the Magistrate Judge

relied upon when issuing the search warrant. The affidavit contained information garnered from "several reliable confidential sources." *See Affidavit in Support of Search Warrant* ¶8 ("Affidavit"). The sources were identified as DEA-1, DEA-2, and DEA-3. DEA-3 had received training specific to narcotics investigations. *Id*. at ¶4. These sources indicated that Defendant appeared to be the leader of a drug trafficking organization. *Id* at ¶8. The sources also observed consistent short-term traffic at Defendant's residence late at night. *Id*. at ¶9.

After receiving this information, the DEA agents conducted an independent investigation to corroborate these statements. The agents identified two possible drug couriers who were frequently present in and around Defendant's residence. *Id*. at ¶11. One suspected courier drove a white sedan that was often at the residence. *Id*. The driver was identified by her vehicle registration as Angela Withenshaw, and the sources later identified her by photograph. *Id*. DEA agents observed another vehicle that frequently appeared at the residence and identified the driver as Edward Frowner. *Id*. at ¶12. The sources identified Mr. Frowner by photograph and confirmed that he frequents the residence. *Id*. The investigation turned up lengthy criminal records for Defendant, Ms. Withenshaw, and Mr. Frowner, including prior drug offenses for all three individuals. *Id*. at ¶¶10-12. The agents learned that Defendant often used the alias "Melvin Purifoy," including on the deed to his home. *Id*. at ¶14. Three of Defendant's vehicles were registered in the names of various corporations, with another in the name of "Melissa Kaye Smith." *Id*. at ¶¶13-14. DEA-1 and DEA-2 stated that Defendant went so far as to burn off his fingerprints to hide his identity and became "outraged" when referred to by his real name. *Id*. at ¶15. Agent DeBottis stated that, in his knowledge and experience, the use of aliases is consistent with drug trafficking. *Id*.

The agents conducted a trash pull of a container at the roadside of Defendant's residence.

*Id*. at ¶16. They found plastic baggies with the corners cut out in a fashion that Agent DeBottis recognized as a method to package cocaine. *Id*. Another baggie contained a white substance, which a field test revealed to be cocaine. *Id*. In addition, the agents found a crack pipe, material used to smoke crack cocaine, and mail addressed to Defendant. *Id*.

### III. ANALYSIS

**A. Probable Cause Review**

Defendant first argues that the warrant was not supported by probable cause. Defendant's argument attacks the reliability of the sources, the information gathered from them, and the level of corroboration provided by the agents. The government insists that the warrant was supported by probable cause, or alternatively, the good faith exception to the exclusionary rule is applicable.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The United States Supreme Court has held that a magistrate's duty in determining probable cause is to:

> [M]ake a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). A reviewing court's duty is to "ensure that the magistrate had a 'substantial basis . . . for concluding' that probable cause existed." *Id*. at 238-39. This determination is limited to the "information presented in the four-corners of the affidavit." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). Finally, the magistrate's decision must be given great deference by the reviewing court. *See United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

When, as here, information is gained by the use of hearsay informants, the reviewing court must consider the totality of the circumstances, including the reliability of the informants. *See Gates*, 462 U.S. at 230; *Frazier*, 423 F.3d. at 532. A reliable informant's statements can provide the basis for probable cause, even absent police corroboration. *See United States v. Smith*, 182 F.3d 473, 487-88 (6th Cir. 1999). On the other hand, a failure to show reliability does not automatically negate a finding of probable cause if there is adequate independent corroboration. *See United States v. McCraven*, 401 F.3d 693 (6th Cir. 2005). *See also Allen*, 211 F.3d at 975-76; *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986).

The Affidavit contains several statements from the confidential sources, including Defendant's involvement in drug trafficking and the presence of short-term traffic. The DEA agents corroborated this information by their investigation and personal knowledge. Their investigation revealed Defendant's use of an alias, the presence of possible drug couriers, and the criminal histories of Defendant, Ms. Withenshaw, and Mr. Frowner. Furthermore, the agents searched a roadside trash container next to Defendant's house finding the corner-less plastic baggies, the plastic baggie with cocaine residue, crack cocaine smoking devices, and mail addressed to Defendant. The agents sufficiently corroborated the informants' statements, thereby mooting any reliability concerns.

In *United States v. Wade*, No. 1:06-cr-21, 2006 U.S. Dist. LEXIS 63776 (W.D. Mich. Sept. 6, 2006), probable cause was found to exist when an anonymous tip (stating only that the defendant was selling "lots of drugs," that there were drugs in the house, and "lots of traffic" outside it) was coupled with the finding of loose marijuana in a trash bin. *Id*. at *16. The combination of informant tips with the presence of drugs or drug paraphernalia has routinely been held to meet the probable

4

cause standard, regardless of any evidence of reliability. *See, e.g.*, *United States v. Lawrence*, 308 F.3d 623 (6th Cir. 2002); *United States v. Reinholz*, 245 F.3d 765 (8th Cir. 2001). In fact, some courts have held that drug evidence in trash cans independently establishes probable cause. *See United States v. Briscoe*, 317 F.3d 906, 908 (8th Cir. 2003). Here, the statements, the investigation, and the results of the trash pull provide an even firmer ground for probable cause than was present in the above cases.

Defendant cites *United States v. Mosley*, No. 08-22-KKC, 2008 WL 1868012 (E.D. Ky. Apr. 24, 2008), a case holding that asserted police knowledge and possible drug evidence from a trash pull did not constitute probable cause. A key factor in *Mosley*, however, was that the alleged contraband found during the trash pull was never tested. *See* 2008 WL 1868012 at * 4 ("The problem with this suspected drug evidence is just that—it is only *suspected* drug evidence."). The Affidavit states that the residue on the baggies pulled from Defendant's garbage tested positive for cocaine. *See* Affidavit at ¶16.

Defendant also cites three Sixth Circuit cases (*United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005); *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003); and *United States v. Hatcher*, 473 F.2d 321 (6th Cir. 1973)), for the proposition that a defendant's reputation as a drug dealer or fraternization with reputed drug dealers is not enough to support a finding of probable cause. In none of those cases, however, was contraband found in a trash pull directly in front of the defendant's home.

Defendant isolates and attacks single pieces of evidence in the Affidavit, but a probable cause determination considers the totality of the circumstances. In this case, after considering the totality of the circumstances, including the informants' statements, the affiant's experience, the

5

results of the agents' investigation, and the contents of the trash container, the Court finds that the Magistrate Judge had a substantial basis for concluding that probable cause existed.

In addition, the government correctly argues that if probable cause is found to be lacking, the good faith exception to the exclusionary rule enunciated in *United States v. Leon*, 468 U.S. 897 (1984), is applicable. Based on the case law discussed above, it would not have been unreasonable for the agents to rely on a warrant based on an affidavit containing informant tips, independent agency investigation, and the results of the trash can search. Therefore, the Court finds that even if probable cause did not exist, the good faith exception to the exclusionary rule applies, and the evidence is admissible.

## B. Defendant's Request for a *Franks* Hearing

Defendant also challenges the veracity of the statements contained in the Affidavit. If a defendant requests an evidentiary hearing to challenge the veracity of an underlying affidavit, he must meet the requirements established by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). The government argues that Defendant has not met these requirements.

A so-called *Franks* hearing will be granted only if the following two conditions are met: (1) "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth" was included in the affidavit; and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id*. at 155-56. To meet this standard, the defendant must cite to "specific false statements" that were made and his allegations "must be more than conclusory." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). He should include an offer of proof and affidavits to support this. *Id*. Only the deliberateness or recklessness of the affiant will be considered, not that of the informants. *Franks*, 438 U.S. at 171.

In his brief, Defendant specifically cited Paragraphs 8, 9, 11, and 12 from the Affidavit as containing false statements. The testimony at the hearing and his supplemental brief focused on Paragraph 12, and to a lesser extent, Paragraph 11, both of which discussed the presence of Ms. Withenshaw and Mr. Frowner and their status as possible drug couriers. Defendant presented statements and testimony from Ms. Withenshaw, Mr. Frowner, and David Arafat. Ms. Withenshaw stated that she was Defendant's live-in girlfriend and was not a drug courier for him. She claimed that there was not consistent short-term traffic late at night. She also said that Edward Frowner had never been to Defendant's residence. Mr. Frowner testified that he does not know Defendant, that he had never been to Defendant's residence, and that he was not a drug courier for Defendant. In addition, he stated that he had not possessed or operated the car referenced in the Affidavit since March 30, 2008.

The affiant, Agent DeBottis, also testified. After seeing Mr. Frowner, he admitted that the man he saw by the white car was a different black male. The mix-up occurred, in part, because Mr. Frowner had sold his vehicle prior to the investigation. It was purchased by Defendant's neighbor, Mr. Arafat, but Mr. Arafat did not register the vehicle in his name. Thus, a registration check showed Mr. Frowner to be the owner of the vehicle. Agent DeBottis also admitted that he never witnessed the man, whom he mistakenly believed to be Mr. Frowner, enter Defendant's residence.

There was no allegation that Agent DeBottis recklessly or intentionally included Paragraphs 8 & 9. Defendant's argument dealt with the knowledge and reliability of the informants. This is inconsequential to a *Franks* determination. Defendant's evidence suggests that the Affidavit contained false information in Paragraphs 11 and 12, and it appears that some portions, such as Mr. Frowner's presence, are indeed false. However, Defendant has not provided evidence that Agent

7

DeBottis recklessly or intentionally included false statements. Agent DeBottis misidentified Mr. Frowner from a printed photograph believing that Mr. Frowner still owned the car registered in his name. This was a plausible mistake, not reckless behavior. Furthermore, Agent DeBottis referred to both Ms. Withenshaw and Mr. Frowner as *possible* drug couriers. Whether they ultimately were or were not drug couriers does not render this belief reckless.

Even if the Court were to find these inclusions reckless, this would only meet the first prong of the *Franks* test. Defendant would still have to prove that probable cause would cease to exist when the reckless statements are omitted. Defendant argues that the information regarding the couriers and the alleged short-term traffic were the only links to drug trafficking. Without the paragraphs regarding the couriers, Defendant claims probable cause does not exist.

In actuality, the false identification of Mr. Frowner is quite insubstantial to the probable cause determination. There was still an unknown male loitering around Defendant's home. That it was not Mr. Frowner does nothing to contradict the affiant's belief that the man was a possible drug courier. Likewise, Ms. Withenshaw's testimony offers little challenge to the affiant's state of mind regarding her status. Further, Defendant ignores the informants' initial statements, the use of aliases, and the most significant evidence—the results of the trash pull. Therefore, even if the Court were to excise Paragraphs 11 and 12, probable cause would still exist. As such, Defendant has not met his burden under *Franks*.

## C. Suppression of Statements

Defendant next moves to suppress statements made during the execution of the search warrant. A defendant may not be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A suspect subject to custodial interrogation "must first be given notice of

his or her right against self-incrimination." *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003). In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court listed specific rights that a defendant must be made aware of before interrogation may take place. Statements obtained in violation of *Miranda* may not be used for certain purposes at a criminal trial against the defendant. *See Swanson*, 341 F.3d at 528.

The parties agree that Defendant was in custody at the time, but Defendant contends he was never apprised of his *Miranda* rights. The government presented a DEA report stating that Defendant was read his *Miranda* rights at approximately 7:45 a.m. the day of the search and waived them. Agent DeBottis and DEA Agent Edward Dosch testified to the same. Ms Withenshaw testified that the warnings were never given. The determination of whether the rights were read rests on the credibility of the parties. *See United States v. Walls*, 116 Fed. Appx. 713 (6th Cir. 2004) (upholding the district court's finding that the officer was a more credible witness than the defendant). The Court finds that due to her status, demeanor, possible motives, and unpersuasive testimony, Ms. Withenshaw was not a credible witness. On the other hand, the Court finds no reason to question the credibility of Agents DeBottis and Dosch. Therefore, the Court finds that the warnings were properly given.

The remaining question is whether there was a valid *Miranda* waiver. Like other constitutionally protected rights, the right against self-incrimination may be waived, but a waiver must be made "voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 445. The government has the burden of proving the voluntariness of a waiver by the preponderance of the evidence. *Seymour v. Walker*, 224 F.3d 542, 554 (6th Cir. 2000).

Agents DeBottis and Dosch did not have with them the typical DEA written waiver form for

Defendant to sign. There is, however, no requirement of a written waiver of rights. *See United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002). Ms. Withenshaw testified that the agents told Defendant "[N]obody knows you live here so if you just cooperate it will help you a great deal" and "If you give us somebody, nobody will even know we came here today." Agent Dosch conceded that the first statement was made, but this statement is not the type that precludes a finding of a voluntary waiver. *See United States v. Hopkins*, 295 F.3d 549, 551 (6th Cir. 2002). Defendant provides no argument as to how the second statement rendered his waiver involuntary or unknowing. Based on the government's evidence and witness testimony, the Court finds that the waiver was voluntary and the statements are admissible.

## IV. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: October 24, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 24, 2008.

S/Marie E. Verlinde
Case Manager
(810) 984-3290