UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff/Respondent,

v.

ARNOLD CECIL PURIFOY,
a/k/a MELVIN PURIFOY,

        Defendant/Movant.
_____/

CASE NO. 2:08-CR-20238
        2:11-CV-15044
JUDGE LAWRENCE P. ZATKOFF
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION ON (1) DEFENDANT'S MOTION TO VACATE SENTENCE (docket #49); and (2) DEFENDANT'S MOTION TO AMEND (docket #56)**

I. RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II. REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A. *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B. *Motion to Vacate* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        1. *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        2. *Career Offender Sentencing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        3. *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    C. *Motion to Amend* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1. *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    D. *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        1. *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    E. *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III. NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and deny defendant's motion to amend. If the Court accepts this recommendation, the Court should also deny defendant a certificate of appealability.

II.     REPORT:

A.     *Background*

> On April 24, 2008, agents of the Drug Enforcement Administration ("DEA") executed a search warrant at a condominium associated with [defendant Arnold] Purifoy located on Alexa Drive in Commerce Township, Michigan. Prior to the execution of the search warrant, DEA agents had been investigating Purifoy as the suspected leader of a cocaine trafficking operation. During the search of the condominium, the agents discovered just under 500 grams of cocaine and various firearms, including an assault rifle with a one-hundred-round ammunition drum. The assault rifle was found in the same bedroom closet as the cocaine, which was stored in a safe.

*United States v. Purifoy*, 396 Fed. Appx. 202, 204 (6th Cir. 2010). Based on the fruits of this search, on June 10, 2008, defendant/movant Arnold Cecil Purifoy, also known as Melvin Purifoy, was charged in this Court in a five count First Superceding Indictment with: (1) felon in possession of a firearm, 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); and (3) possession of a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c); (4) firearms and ammunition forfeiture, 18 U.S.C. § 924(d); (5) criminal forfeiture, 21 U.S.C. § 853. After the Court denied defendant's motion to suppress, defendant and the government entered into a Rule 11 Plea Agreement. Pursuant to the agreement, defendant pleaded guilty to Counts 1-3 of the Superceding Indictment, conditioned on his right to appeal the Court's denial of his motion to suppress. The parties agreed on a guideline range of 262-327 months. This included an agreement that defendant was a career offender pursuant to U.S.S.G. § 4B1.1. Defendant entered his plea on November 20, 2008.

Consistent with the parties' Rule 11 Plea Agreement, the Presentence Investigation Report calculated a guideline range of 262-327 months. Prior to sentencing defendant, through counsel, filed a sentencing memorandum challenging the constitutionality of the career offender provision and arguing that he should receive a downward departure because the career offender enhancement vastly overstates the severity of defendant's offense. On April 14, 2009, the Court entered a written

sentencing opinion rejecting defendant's arguments. On the same date, the Court sentenced defendant to consecutive terms of 101 months' imprisonment on Counts 1 and 2, and 60 months' imprisonment on Count 3, for a total sentence of 262 months' imprisonment, the minimum contemplated by the Rule 11 Plea Agreement. Defendant subsequently appealed to the Sixth Circuit, challenging the Court's denial of his motion to suppress. The Sixth Circuit affirmed. *See Purifoy*, 396 Fed. Appx. 202.

The matter is currently before the Court on two motions filed by defendant. On November 14, 2011, defendant filed a motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. Defendant contends that his sentencing as a career offender under § 4B1.1 was inappropriate, and that counsel was ineffective for failing to object on this basis. The Government filed a response to this motion on December 15, 2011, and defendant filed a reply on January 6, 2012. On July 8, 2013, defendant filed a motion to amend or supplement, seeking to add a claim that the Court erred in denying his motion to suppress in light of the Supreme Court's decision in *Florida v. Jardines*, 133 S. Ct. 1409 (2013). The Government filed a response to this motion on September 4, 2013. For the reasons that follow, the Court should deny both motions.

B.   *Motion to Vacate*

   1.   *Legal Standard*

The substantive provisions of § 2255 provide that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255 para. 1. Thus, a defendant may be entitled to § 2255 relief if his conviction or sentence violates either the Constitution or a federal statute. However, in order to

obtain relief under § 2255 on the basis of a nonconstitutional–*i.e.*, statutory or rule–error, the record must reflect a fundamental defect in the proceedings which inherently causes a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *See Reed v. Farley*, 512 U.S. 339, 348 (1994) (Ginsburg, J.); *id.* at 355-56 (Scalia, J.); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).

        2.      *Career Offender Sentencing*

At the outset, defendant's challenge to his career offender sentencing is not cognizable in this § 2255 motion. As noted above, non-constitutional errors are cognizable under § 2255 only where the error results in a miscarriage of justice. As the Sixth Circuit has explained, "nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process. . . . A brief consideration of the policy underlying collateral review demonstrates that nonconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver." *United States v. Grant*, 72 F.3d 503, 506 (6th Cir. 1996). Defendant's challenge to the application of § 4B1.1 does not assert the type of "fundamental unfairness" or "breakdown of the trial process," *id.* that is cognizable under § 2255. *See Sun Bear v. United States*, 644 F.3d 700, 704-05 (8th Cir. 2011) (en banc).

In any event, defendant cannot show that his sentencing as a career offender under § 4B1.1 was improper. Under § 4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence

4

or a controlled substance offense." U.S.S.G. § 4B1.1(a). Defendant contends that none of the prior convictions relied upon by the Court in imposing sentence qualify as predicate offenses under § 4B1.1(a)(3).[1] So long as two of defendants' prior convictions qualify, defendant's sentence was proper. Here, the presentence report indicates that on July 12, 1997, defendant was convicted in Michigan state court of possession with intent to deliver less than 50 grams of a controlled substance, and that on April 3, 1998, he was convicted of delivery of less than 50 grams of a controlled substance, both in violation of MICH. COMP. LAWS § 333.7401(2)(a)(iv). For purposes of § 4B1.1(a), "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Section 333.7401(2)(a)(iv) prohibits the distribution and possession with intent to distribute a controlled substance, and is punishable by a term of imprisonment exceeding one year. *See* MICH. COMP. LAWS § 333.7401(2)(a)(iv). Thus, defendant's two convictions under this state statute constitute predicate felonies for the career offender enhancement under § 4B1.1(a).

Defendant contends that these offenses do not constitute predicate felonies because there is no evidence that he engaged in anything other than simple possession, and that the presentence report relies on extrajudicial records to establish that the convictions qualify as § 4B1.1 predicates. This argument is without merit. In determining whether a prior conviction constitutes a predicate offense

---

[1]Defendant does not challenge the existence or validity of these state court convictions, nor could he make such a challenge through a § 2255 motion. *See Daniels v. United States*, 532 U.S. 374, 378-79 (2001). The only question here is whether the presumptively valid state court convictions constitute proper predicates for sentencing as a career offender under § 4B1.1.

5

for career offender enhancement under § 4B1.1, courts apply the categorical approach developed in cases applying the Armed Career Criminal Act. *See United States v. Cooper*, 739 F.3d 873, 878 (6th Cir. 2014). Under this analysis, a court general applies a "categorical approach" which simply compares "the elements of the statute forming the basis of the defendant's conviction with the elements of the" predicate offense under § 4B1.1. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Under this approach, "[s]entencing courts may 'look only to the statutory definition'–*i.e.*, the elements–of a defendant's prior offense, and *not* 'to the particular facts underlying those convictions.'" *Id*. at 2283 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). In a "narrow range of cases," *Taylor*, 495 U.S. at 602, the sentencing court may apply a "modified categorical approach, looking at the charging documents or plea colloquy for the "limited function" of assisting "the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps*, 133 S. Ct. at 2283; *see also*, *Shepard v. United States*, 544 U.S. 13, 19-20 (2005). As the Sixth Circuit has recently explained (applying the "crime of violence" prong of § 4B1.1),

> In determining whether a prior conviction qualifies as a crime of violence, we conduct a well-established two-step analysis. First, we apply the categorical approach outlined in *Taylor v. United States*, 495 U.S. 575 (1990), "look[ing] only to the fact of conviction and the statutory definition–not the facts underlying the offense–to determine whether that definition supports a conclusion that the conviction was for a crime of violence." *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008) (citing *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006)). Second, "[i]f it is possible to violate the statute in a way that would constitute a crime of violence and in a way that would not, [we] may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction." *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

*Cooper*, 739 F.3d 873, 878 (6th Cir. 2014).

Applying this analysis here, it is clear that defendant's convictions under § 333.7401(2)(a)(iv)

constitute "controlled substance offenses" under the categorical approach, because it is not possible to violate § 333.7401(2)(a)(iv) in a way that would not constitute a "controlled substance offense" as that term is defined in § 4B1.2(b). That section, as noted above, defines a controlled substance offense for purposes of § 4B1.1 as an offense prohibiting any of the following: "manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Section § 333.7401 provides that "a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance[.]" MICH. COMP. LAWS § 333.7401(1). Each of these alternative elements is explicitly covered by the definition found in § 4B1.2(b). Contrary to defendant's argument, nothing in § 33.7401 allows for a conviction based on simple possession. Rather, simple possession is prohibited by a separate statutory provision, MICH. COMP. LAWS § 333.7403. Because it is not possible to violate § 333.7401 in a way that does not come within the definition of "controlled substance offense" set forth in § 4B1.2(b), defendant's two convictions under § 333.7401 constitute predicate controlled substance offenses under the categorical approach. Therefore, regardless of whether any of the other convictions set forth in the presentence report constitute crimes of violence, defendant was properly sentenced as a career offender under § 4B1.1.[2] Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

---

[2]Defendant also appears to argue that because the presentence report relied upon arrest records to describe the facts underlying these convictions, the Court considered material it was not permitted to consider under *Shepard*. But here the Court did not need to consider the underlying facts regarding defendant's prior convictions, and indeed was prohibited from doing so under the categorical approach. Because defendant's convictions categorically are controlled substance offenses under § 4B1.1, the facts underlying those convictions are irrelevant, and thus it is irrelevant whether and on what basis the presentence report described the underlying facts.

7

3. *Ineffective Assistance of Counsel*

Defendant also contends that counsel was ineffective for failing to object to his sentencing as a career offender under § 4B1.1. This claim is without merit. The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, defendant must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. As the Supreme Court has recently explained, *Strickland* establishes a high burden that

is difficult to meet:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

Here, defendant cannot show that counsel was deficient in failing to object to his sentencing as a career offender under § 4B1.1, or that he was prejudiced by counsel's failure to object. As explained above, defendant was properly sentenced under § 4B1.1 because his prior state court convictions under MICH. COMP. LAWS § 333.7401(2)(a)(iv) constitute predicate "controlled substance offenses." And because defendant was properly sentenced as a career offender, he cannot show that counsel was ineffective for failing to object to his sentencing on that basis. *See Gibbs v. United States*, 3 Fed. Appx. 404, 406 (6th Cir. 2001); *Arnold v. United States*, 63 F.3d 708, 709 (8th Cir. 1995). Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

C.     *Motion to Amend*

Defendant also seeks leave to amend or supplement his motion to add a claim challenging the

validity of the search which resulted in the charges against him under the Supreme Court's recent decision in *Florida v. Jardines*, 133 S. Ct. 1409 (2013). The Court should deny this motion.

1.      *Legal Standard*

Rule 15 of the Federal Rules of Civil Procedure, which is applicable to this § 2255 motion, *see Mayle v. Felix*, 545 U.S. 644 (2005); Rule 12, Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255, provides that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). As the Supreme Court has stated, "[i]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, as *Foman* makes clear there are certain situations in which it is appropriate to deny leave to amend. One such circumstance is when amendment would be "futil[e]." *Foman*, 371 U.S. at 182; *see also*, *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003). Amendment is futile when the proposed amendment is subject to dismissal under Rule 12(b)(6), that is, when the proposed amendment fails to state a claim upon which relief may be granted. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 307 (6th Cir. 2000); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000).

2.      *Analysis*

Here, leave to amend to add the claim defendant seeks to assert would be futile, for three reasons. First, any claim based on *Jardines* is barred by the nonretroactivity principle of *Teague v.*

10

*Lane*, 489 U.S. 288 (1989). As the Supreme Court has explained:

> When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987). As to convictions that are already final, however, the rule applies only in limited circumstances. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, see *Bousley v. United States,* 523 U.S. 614, 620-621 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, see *Saffle v. Parks,* 494 U.S. 484, 494-495 (1990); *Teague v. Lane,* 489 U.S. 288, 311 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra,* at 620 (quoting *Davis v. United States,* 417 U.S. 333, 346 (1974)).
>
> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle, supra,* at 495 (quoting *Teague,* 489 U.S., at 311). That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." *Id.,* at 313 (emphasis added). This class of rules is extremely narrow, and "it is unlikely that any . . . 'ha[s] yet to emerge.'" *Tyler v. Cain,* 533 U.S. 656, 667, n. 7 (2001) (quoting *Sawyer v. Smith,* 497 U.S. 227, 243 (1990)).

*Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (footnote and parallel citations omitted). Here, defendant's sentence became final 90 days after the Sixth Circuit affirmed his conviction on appeal, when his time for seeking *certiorari* in the United States Supreme Court expired. This occurred on December 9, 2010, well before the Supreme Court issued its decision in *Jardines* in 2013. Because *Jardines* was not decided until after defendant's conviction became final, it cannot be used to retroactively attack the validity of his conviction. *See Webb v. Coakley*, No. 4:13-CV-649, 2013 WL 1819237, at *5 (N.D. Ohio Apr. 29, 2013) (citing *Bess v. Walton*, 468 Fed. Appx. 588, 589 (6th Cir. 2012).

11

Second, *Jardines* provides no basis for finding that the search in this case was unconstitutional. The search warrant affidavit submitted by DEA Task Force Agent Patrick DeBottis averred a number of grounds to support a finding of probable cause to believe that evidence of drug trafficking activity would be found in defendant's condominium. This included statements from confidential informants identifying the condominium as a distribution center for defendant's illegal drug operation, evidence of short-term vehicular activity at the condominium late at night, and observations and records searches by DeBottis confirming the confidential informants' statements and the ownership of the condominium and defendant's car. *See Purifoy*, 396 Fed. Appx. at 205-06. Of relevance here, De Bottis also

> averred that on April 20, 2008, he and other DEA agents searched a large trash container abandoned near the condominium and recovered numerous plastic bags with cut corners, one of which contained cocaine residue, a proof of residency for "MC Purifoy" at the condominium's address, a piece of paper containing large numbers, a broken crack pipe, and "Chore boy" copper screens, which can be used to smoke crack cocaine.

*Id*. at 206. The Court denied defendant's motion to suppress, holding that "when viewed in totality, the facts presented in the affidavit, including 'the informants' statements, the affiant's experience, the results of the agents' investigation, and the contents of the trash container,' supported a finding of probable cause by the magistrate judge." *Id*. at 207. Rejecting defendant's argument that the affidavit included recklessly or knowingly false statements, the Sixth Circuit affirmed the Court's denial of defendant's motion to suppress, concluding that the facts set forth in the affidavit was "more than enough for a magistrate to conclude that there was 'a fair probability that contraband or evidence of a crime' would be found at the condominium." *Id*. at 211 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Defendant contends that the search of his trash violated his Fourth Amendment rights under

*Jardines*. In that case, the Supreme Court considered "whether using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a 'search' within the meaning of the Fourth Amendment." *Jardines*, 133 S. Ct. at 1413. The Court answered that question in the affirmative, explaining that the Fourth Amendment extends to a home's curtilage, "the area immediately surrounding and associated with the home." *Id*. at 1414 (internal quotation omitted). Although the police, just as private citizens, have an implied licence to approach the front door for the purpose of speaking with the occupant or gaining entry, the Court reasoned, the use of "a trained police dog to explore the area around the home in hopes of discovering incriminating evidence" exceeds the scope of this license, and thus constitutes a search under the Fourth Amendment. *See id*. at 1415-16. Defendant contends that *Jardines* renders the search of his trash an impermissible search under the Fourth Amendment. This argument is without merit. In *California v. Greenwood*, 486 U.S. 35 (1988), the Court held that a person has no reasonable "expectation of privacy in trash left for collection in an area accessible to the public." *Id*. at 41. "[W]hat a person knowingly exposes to the public, even in his own home or office," the Court explained, "is not a subject of Fourth Amendment protection." *Id*. Nothing in *Jardines* purports to alter this rule regarding trash can searches. And in any event, defendant cannot show that the trash can search occurred within the curtilage of his home under *Jardines*. In the search warrant affidavit, Agent DeBottis avers that the trash can was "abandoned at the roadside next to 211 Alexa Drive[.]" Aff. in Support of Search Warrant, ¶ 16. Although defendant challenged as false several statements in the search warrant affidavit, he has never challenged the veracity of this averment. Nor does he now provide any basis to conclude that the trash can was not, as indicated in the affidavit, on the roadside next to the condominium. For purposes of the Fourth Amendment, "[c]urtilage is the land surrounding and

associated with the home which 'harbors the intimate activity associated with the sanctity of a man's home and the privacies of life.'" *Hardesty v. Hamburg Township*, 461 F.3d 646, 652 (6th Cir. 2006) (quoting *United States v. Dunn*, 480 U.S. 294, 300 (1987) (internal quotation omitted)). A public street falls far outside a home's curtilage; indeed, it is not property from which defendant had a right to exclude anyone. Because there is no evidence that the search of the trash occurred within the curtilage of defendant's home, the search was permissible even under *Jardines*.

Third, even if *Jardines* were applicable here, and even if the search of defendant's trash violated *Jardines*, defendant cannot show that he was entitled to suppression of the evidence seized pursuant to the subsequent warrant. Under the good faith exception to the exclusionary rule, suppression is not an appropriate remedy for a Fourth Amendment violation where the police act with objectively reasonably reliance on a warrant issued by a neutral and detached magistrate. *See United States v. Leon*, 468 U.S. 892, 922 (1984). The *Leon* rule has been applied in four circumstances, when officers: (1) reasonably and in good faith rely on a warrant subsequently declared invalid, *see Leon*, 468 U.S. at 922; (2) perform a warrantless search in reliance upon a statute later declared unconstitutional, *see Illinois v. Krull*, 480 U.S. 340, 349-53 (1987); (3) act in good faith reliance upon mistaken information indicating the existence of an outstanding warrant, *see Herring v. United States*, 129 S. Ct. 695, 702-04 (2009); and (4) act in reliance on existing caselaw which justifies the search but which is later overturned, *see Davis v. United States*, 131 S. Ct. 2419, 2429 (2011). *See generally*, *Davis*, 131 S. Ct. at 2428; *McCane*, 573 F.3d 1037, 1042-44 (10th Cir. 2009); *United States v. Peoples*, 668 F. Supp. 2d 1042, 1048 (W.D. Mich. 2009). Here, the agents executed the search of the condominium pursuant to a facially valid warrant. Moreover, they acted in reliance on existing caselaw in searching defendant's trash. Courts applying *Greenwood* prior to *Jardines*

uniformly held that the police may search any trash left in a place reasonably accessible to the public, even if that trash was within the curtilage of the home. *See United States v. Segura-Baltazar*, 448 F.3d 1281, 1287 (11th Cir. 2006); *United States v. Long*, 176 F.3d 1304, 1308 (10th Cir. 1999); *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992); *United States v. Hendrick*, 922 F.2d 396, 400 (7th Cir. 1991). Thus, at the time they searched defendant's trash the agents were acting in reasonable reliance on existing caselaw, and thus defendant would not be entitled to suppression of the evidence, or of the subsequent evidence obtained pursuant to the search warrant issued based on what they found in defendant's trash. *see Davis*, 131 S. Ct. at 2429.

For these three reasons, defendant's claim based on *Jardines* is without merit. Thus, leave to amend to add this claim would be futile. Accordingly, the Court should deny defendant's motion to amend.

D.   *Recommendation Regarding Certificate of Appealability*

1.   *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a defendant may not appeal a denial of motion to vacate unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial

showing" of a denial of a constitutional right, the burden on the movanat is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.   *Analysis*

Here, if the Court accepts my recommendation regarding the merits of defendant's claims, the Court should also conclude that defendant is not entitled to a certificate of appealability. It is clear that defendant's claim challenging the application of the guidelines does not provide a cognizable basis for § 2255 relief. Further, it is clear that defendant's two convictions under MICH. COMP. LAWS § 333.7401(2)(a)(iv) constitute "controlled substance offenses" for purposes of the career offender enhancement under U.S.S.G. § 4B1.1. Thus, the resolution of defendant's sentencing claim is not reasonably debatable. It follows that the resolution of defendant's ineffective assistance claim based on counsel's failure to object to the career offender enhancement is likewise not reasonably debatable. Finally, because *Jardines* does not apply retroactively to defendant's conviction and does not invalidate the search of defendant's condominium, and because in any event even if *Jardines* were applicable defendant would not be entitled to the remedy of suppression of the evidence, the resolution of defendant's motion to amend to add a claim under *Jardines* is not reasonably debatable. Accordingly, the Court should deny defendant a certificate of appealability.

E.   *Conclusion*

In view of the foregoing, the Court should conclude that defendant has not established his entitlement to relief under § 2255 because his claims are either without merit or not cognizable. Accordingly, the Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: April 3, 2014

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 3, 2014.

s/ Kay Doaks
Case Manager